E. N. FARBER et al., Appellees, v. L. A. ANDREW, Receiver, et al., Appellants.

No. 39696.

June 24, 1929.

Rehearing Denied September 21, 1929.

*H. G. Cartwright* and *C. H. E. Boardman,* for L. A. Andrew, appellant.

*W. D. Kearney* and *E. N. Farber, pro se* and for E. L. Swearingen, appellees.

Morling, J.—Plaintiff Swearingen had a life estate in the land in question. Defendant Neff procured a sheriff's deed of this life estate. Swearingen brought suit against Neff, to cancel the sheriff's deed. Neff raised and brought to maturity on this land in 1926 the 70 acres of corn in controversy. Neff, on April 29, 1926, gave to defendant receiver a chattel mortgage on all the crops to be grown on the land during the year 1926. On August 25, 1926, decree was entered in the cancellation suit, quieting title to the life estate in the plaintiff Swearingen, and awarding him $1,552.66 on account, and in addition, awarding to Swearingen $1,200 rent for the premises in controversy for the year ending March 1, 1927, and decreeing it to "be due and payable on March 1, 1927." The interest of Neff in that case was assigned to defendant receiver, who undertook to establish Neff's

right to the life estate, and to that end prosecuted appeal to this court. Neff refused to harvest the corn. Pending the appeal, and on November 1, 1926, defendants here ʻ(receiver and Neff) and Swearingen made a written contract reciting the judgment against Neff, and that $1,200 of it was for rent of the premises in controversy for the rental year ending March 1, 1927, reciting that Neff had planted 70 acres of corn on the premises; that the chattel mortgage to the receiver covered the corn; that Swearingen ''claims said corn by virtue of his landlord's lien upon the same to secure the payment of the said $1,200;'' that it was necessary to have the corn harvested ''and some disposition of the same, pending the outcome of the claims of the respective parties thereto or to the proceeds of the sale thereof.'' The agreement proceeded: ''That arrangements shall immediately be made for the harvesting of the said 70 acres of corn, * * * and for the subsequent disposition or sale thereof,'' for the deposit of the proceeds in bank ''in escrow.''

''The said corn or the said proceeds thereof, in the event of sale, to be kept or held pending the final adjudication of the claims of the respective parties hereto, and upon the final adjudication the said corn or the proceeds thereof shall immediately be delivered to the said party or parties finally adjudged entitled thereto.''

On December 7, 1926, the same parties joined in an agreement with a grain company by which Neff agreed to husk, shell, and haul the corn. The grain company agreed to purchase the corn at a stated price per bushel, and to advance the necessary cost of husking, etc. The price of the corn, amounting to more than Swearingen's claim for rent, was paid by the purchaser to defendant receiver, and held in the form of a cashier's check on another bank, that, as the examiner in charge testifies, ''whoever is supposed to get it, it can be assigned right to.''

On March 10, 1927, Swearingen assigned to plaintiffs Kearney and Farber his interest in his judgment against Neff. The decree in favor of Swearingen was affirmed in this court December 13, 1927. *Swearingen v. Neff*, 204 Iowa 1167. Notice of petition of rehearing was served, but no petition was filed. On May 14, 1928, more than a year after the expiration of the year for which the rent was due, the petition in the present suit was

filed, setting out the written agreements, and alleging that the final adjudication referred to in the agreement of November 1, 1926, was the adjudication of the dispute as to the ownership of the life estate, and whether Swearingen was entitled to the rent for the year ending March 1, 1927. The petition alleges oral agreements between plaintiff Swearingen and defendant receiver that the funds derived from the sale of the corn should be deposited in Fidelity Savings Bank, and on final adjudication of the appeal, the corn or proceeds would be subjected to the rent, if Swearingen was successful on appeal, and that Swearingen would have no interest in the corn or proceeds if he was unsuccessful. The answer of the receiver admits the written agreements, but denies the alleged oral agreements. The written agreements in behalf of the receiver were executed in his name by Berkley, the examiner in charge. Plaintiff Kearney, who was the attorney for Swearingen, testified to oral agreements with the examiner, as alleged. The only objection made to his testimony was to one question. Kearney was asked to tell what the talk "was, as related to this property on which the receiver, or the bank through the receiver, was claiming to have a chattel mortgage." The sole objection was "that it is not binding on this defendant, and calling for a conversation with the agent of the receiver, who has no power to bind the receiver without an order of this court." The court ruled: "It will be taken, subject to the objection." The record is indefinite as to when the various conversations and oral agreements testified to occurred, but it is assumed by both sides that they occurred both before and at the time of and after the written agreement of November 1, 1926. No objection that the evidence tended to vary the written contracts was made. The examiner, as a witness for defendants, denied that, at any time subsequent to the execution of the agreement of November 1, 1926, he "told one Kearney, in substance, that, if the appeal in the Supreme Court was decided in favor of Swearingen, that their landlord's lien would continue, and that they would have the $1,200." The examiner also testified, over objection and motion to strike, as calling for conclusion, that he did not "understand the agreement to be that way" (as testified to by Kearney).

Defendants argue two propositions:

"First, any right the plaintiff had to the said $1,200 could

only arise out of a landlord's lien. The plaintiff having taken no steps to perfect his landlord's lien, his rights are lost. Second, assuming that the receiver, through his examiner in charge, did make the agreement claimed, the receiver or his examiner in charge cannot be bound thereby.''

Defendants urge that the receiver's chattel mortgage and Swearingen's landlord's lien rights were in no wise involved or adjudicated in the appeal; that the claims of the parties to the corn or its proceeds, and the final adjudication referred to in the written agreement, could not have had reference to the pending appeal; that the receiver was powerless to make such an agreement without the approval of the court; and that the examiner in charge had no authority to make it.

The execution of the written agreements is conceded. It was plain that the receiver, by successfully prosecuting Neff's appeal, would defeat Swearingen's claims to the land and to the rent, and consequently to any right to a lien on the corn, and would establish thereby the lien of his own mortgage. Swearingen's claim either to the corn or to the proceeds would thereby be eliminated, and the receiver's claim under his assignment from Neff, as well as under the chattel mortgage, established. On the other hand, if Swearingen should succeed on the appeal, Swearingen's right to the rent, and consequently to a statutory landlord's lien, would be established. The receiver cannot claim any lack of privity with Neff, for the receiver had an assignment of Neff's interest, and was prosecuting the appeal for Neff. His chattel mortgage was given by Neff. But the rights which the receiver had under the chattel mortgage could rise no higher than those of Neff. It is not contended that the chattel mortgage was superior to the landlord's lien. The parties, at the time of the making of the agreement, had an interest in preserving the corn and converting it into money. Measures for thus saving the corn for the benefit of the party who should succeed in the pending lawsuit were necessary, and if they were not taken, the winner would be a loser. It does not appear what had been done, at the time of the agreement, toward perfecting the appeal; but the decree appealed from had been rendered only about two months before the first agreement was made, and the decision of the appeal was not made until December 13, 1927,—a date which, in the ordinary course of pro-

cedure, would reasonably be contemplated. It must have been within their contemplation that their rights would be determined as a result of the appeal, and as of the time of the agreement of November 1, 1926. The parties could not have contemplated litigation to establish either the chattel mortgage lien or landlord's lien, or to establish date of interest of the parties other than that of November 1, 1926; for they were agreeing to sell the corn, and such sale would terminate both liens. They were agreeing to create a fund, to be distributed according to their rights. Presumptively, they had in mind their existing rights,—not such rights as might be determined by their future action or non-action, other than in the prosecution of the appeal. The examiner so understood it, for he took the cashier's check for the price of the corn, that "whoever is supposed to get it, it can be assigned right to." The receiver and Swearingen were, for their mutual benefit, converting the corn into a trust fund, and in effect, we think, necessarily agreeing that their rights in the trust fund should be determined by the appeal as of November 1, 1926. The affirmance on appeal, as must have been contemplated, finally determined that Swearingen was entitled to the rent; that, resultantly, he had a landlord's lien on the corn when the agreement was made; that the receiver's then right in the corn was a chattel mortgage lien. Necessarily, the chattel mortgage lien would be subject to the landlord's lien. It would be unreasonable to hold that the parties had any thought that Swearingen would bring a suit to recover the rent and establish a landlord's lien, which, as a result of the sale, would not thereafter exist. It would be unreasonable to hold that the parties contemplated that Swearingen should bring such a suit to establish the priority of a lien the existence of which would be determined by the sale, and the continued existence of which after the time of the contract would, in any case, be subject to the exigencies of the appeal, that might not be decided in a year. It would be unreasonable to hold that the parties had any thought that Swearingen should sue to collect his rent and enforce his lien while the very existence of his right thereto was the matter in dispute, and was then the subject of litigation that would determine it. It is not claimed that suit by the receiver was contemplated. The admitted written agreement must, therefore, in the light of the established facts, be held to give to Swearingen, as a result of the ap-

peal in the cancellation suit, priority in the fund over the receiver's mortgage.—*Affirmed.*

ALBERT, C. J., and STEVENS, FAVILLE, DE GRAFF, and WAGNER, JJ., concur.